UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cr-00109-JMS |
| | ) | |
| JEFFREY ESPOSITO | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Sentencing Memorandum**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the

Southern District of Indiana, and Steven DeBrota, Deputy Chief, General Crimes Unit, and

Lauren S. Kupersmith, Trial Attorney, Child Exploitation and Obscenity Section, Department of

Justice, hereby submits this Sentencing Memorandum in advance of the hearing presently

scheduled for January 7, 2020.  This Memorandum will address the factors in 18 U.S.C.

§ 3553(a) and explain why a sentence of 620 years recommended after the correct calculation of

the advisory Sentencing Guidelines is a reasonable sentence in this case.

## I.      Procedural Posture

On April 11, 2018, Jeffrey Esposito ("the Defendant") was charged by Indictment with

twenty (20) counts of Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e),

and one (1) count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B)

and (b)(2).  The first twenty charges relate to the recording of his repeated sexual abuse of his

minor victim.  The Defendant's sexual abuse of the victim started when the victim was

approximately 7-8 years old and continued for years, including bondage and torture sessions with

choking, whipping, and other forms of pain.  The twenty counts represent twenty images or

videos of abuse and exploitation over multiple occasions out of the hundreds of child pornography files that the Defendant created using this minor victim.  The Defendant was a member of various websites devoted to the sexual exploitation of children on the anonymous network, Tor, and he participated on various anonymous chatting platforms where he met other offenders, shared his produced material, and specifically requested and received child pornography from those users in exchange.  The final charge represents the thousands of other child pornography the Defendant maintained on his various devices, which included images and videos depicting bondage and torture, images and videos depicting children as young as three years old, and images and videos of minor victims who were abused by other offenders specifically for the Defendant's benefit.

The Defendant entered a guilty plea to the 21-count Indictment on June 4, 2019.  He faces sentencing on January 7, 2020 for his intentional, persistent, and perverse sexual exploitation of his minor victim, as well as his collection of images and videos of sexual abuse of many more minors.  As discussed in detail below, the applicable Sentencing Guideline calculations and the consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a) all demonstrate the need for a significant sentence in order to protect the public from the Defendant, to reflect the seriousness of the Defendant's many offenses, and deter others who would follow the Defendant's example.  The only just sentence is a significant sentence, comprised of consecutive terms of imprisonment for each of the Defendant's intentional, separate charged criminal offenses.  To that end, the United States requests that the Defendant be sentenced to a total term of imprisonment of 620 years (7,440 months).

## II.        The Defendant's Criminal Conduct and Charges

The heinous facts of the Defendant's criminal conduct and pattern of activity are well documented in the Presentence Investigation Report, Docket 48 ("PSR").  At the crux of defendant's horrific conduct, the Defendant repeatedly filmed himself sexually abusing and torturing his minor victim.  The multiple occasions of this conduct that are represented in the first twenty counts of the Indictment include explicit sexual acts, such as fondling, ejaculating into the victim's mouth, putting his mouth on the victim's penis and having the victim put his mouth on the Defendant's penis, anally penetrating the victim with a vibrating device, a bottle, his fingers, and his penis, urinating into the victim's mouth while he instructs the victim to put his mouth and hands on the Defendant's penis, all while the victim coughs and protests, and putting the victim in bondage, including while whipping him with a belt.  While the Defendant entered a guilty plea for these twenty counts, his devices demonstrate that these twenty were just a sampling of the hundreds of images and videos depicting the savage sexual abuse and exploitation of the victim.

The victim had to endure this abuse for many years.  The Defendant acknowledged that he photographed and video recorded the sexual acts and sexually explicit conduct with the victim, which included extreme acts such as urinating on him, whipping him while the victim was tied with ropes, penetrating him with a sex toy, and choking him during sex until the victim cried out.  The Defendant also admitted to using a collar that he purchased at a pet store on the victim.  While the Defendant stated he only made a bondage video (where the victim was bound with rope on both his hands and feet) one time, the files found on his devices dispute that this was a one-time occasion.  A lot of these extreme sexual acts were recorded by the Defendant, including Counts 1, 14, 15, and 20.

3

On multiple occasions, the Defendant transported the victim between his Indiana and Ohio residences and then sexually exploited the victim at the Defendant's Indiana residence. During a period of approximately four years, the Defendant admitted that he engaged in sexual acts and sexual conduct with the victim approximately one to three times a month at various locations, including at his residence in Indiana, at his residence in Ohio, and approximately twice at a hotel. The victim's statement and the age of the victim represented in the images and videos demonstrate that this conduct took place over more than a four year period. Even in the Defendant's chats with another offender back in 2016, the Defendant himself claims he and the victim had "7 years of secrets." The Defendant stated that he was sexually attracted to the victim starting when the victim was 8 years old. As the victim got older, the Defendant told the victim because the abuse was stopping, the victim would have to find the Defendant someone else. Additional admissions by the Defendant and statements by the victim are detailed in the PSR at ¶¶ 24-29.

No one can describe the impact of the Defendant's actions better than the victim himself. As the victim now eloquently attests, thanks only to his removal from the Defendant because of the Defendant's arrest and the therapy he is now receiving, the victim can finally feel human and of worth:

> "I felt like I was unsafe and that something was going to happen to me from any little thing I did [REDACTED]. It also made me feel sad a majority of the time throughout the years that it occurred. I felt alone, anxious, afraid, and it made me not really want to be a part of anything or do anything. It took away my pride and joy for just being alive. It made me feel that I just wanted to be dead or asleep and not wake up. When I was with [the Defendant], I was very uncomfortable and afraid for my safety and what he would do to me. In my everyday life, I have been affected. I felt insecure around everyone and felt everything I did was wrong, and that everyone was out to get me. I felt unwanted and unloved . . .

> There was plenty of times throughout all of this, that I tried to find escape just to get away from all the pain. I tried, multiple times to commit suicide so I wouldn't

have to deal with the pain anymore and I would know that I was free and not have to go through this pain . . .

In my head, I would always question if I was important to [the Defendant] or just an object for him. I always felt like an object to him, and never truly [REDACTED]. If anything, I felt more like an animal, like a dog to him. Even though I felt like a dog to [the Defendant] at times, I would always try to find the good in him to get him to realize that what he was doing wasn't right; but it never sank through. When I was younger, going through all of this, I felt like a peasant who was ruled by kings and queens. I felt very disgusted and like trash. Now, since going to therapy every week, it makes me feel like I'm up there with kings and queens. I'm not a peasant. I am no longer disgusted at myself, and I am not a piece of trash. If anything, I am like Macbeth with a shining armor, or like Zeus, the Greek god, ruler of all gods."

The victim's full victim impact statement is included in the Notice of Filing of Victim Impact Statements, Docket 51, Exhibit 1 (under seal).

Beyond the emotional toll of the repeated rape and abuse, the Defendant also subjected the victim to the lifetime horror of having these recordings forever circulating within the pervasive distribution system for child pornography.  In one of the Defendant's many lies, the Defendant told the victim that the recordings of their sexual acts were just for the Defendant and no one else.  But, the Defendant used his computer and internet access to distribute several of the resulting images and videos to many other persons through Tor, a network specifically designed and used for the purposes of facilitating anonymous communication over the Internet.  The Defendant seems to have distributed the images and videos of the abuse of his victim to fuel his sexual fantasies, to gain praise for his activity from other pedophiles and child pornography collectors on Tor, to validate his disordered thinking that this highly personal betrayal was not harmful, to help him rationalize that his criminal activity was not wrong and did not make him a bad person, and to receive additional sexual abuse material from other offenders in return.  It is this last point that eventually led to the Defendant's arrest.

In or about January 2018, during a review of digital devices belonging to an out-of-state defendant who had been active on Tor sites devoted to the sexual exploitation of young children,

portions of private chat messages between this other individual ("M.M.") and a username later

identified as belonging to the Defendant were recovered.  Defendant's usernames, but not his

identity, had been known to law enforcement because the usernames had been active aliases used

on the anonymous online network in forums dedicated to the sexual exploitation of children.

The chats from M.M.'s devices revealed that the Defendant and M.M. would often exchange

their homemade sexual abuse videos with each other.  The video that forms the basis of Count 13

was found on M.M.'s computer and then later found on the Defendant's.  The Defendant and

M.M. made specific requests for videos of particular sexual acts and provide other videos in

return.  The Defendant offered to share the video that forms the basis of Count 20, which

involves the Defendant urinating in the victim's mouth while he protests, and later sought

M.M.'s feedback.  There were several instances in the chat messages where M.M. and the

Defendant request videos that the other had created which depict torturing their victims or where

their victims express pain.  For example, the Defendant had sent M.M. a video showing the

Defendant choking the victim and when M.M. asked if he had a longer one, the Defendant

responded, "no I will get u a better one."  M.M. sent the Defendant three videos depicting M.M.

using duct tape on his victim, and the Defendant asked for more like those.  After discussing

Christmas presents they bought for their victims, the Defendant told M.M. that he was "looking

forward to the thank you sex."

        In these chats, the Defendant often complained that his wife would interfere with access

to the Defendant having sex with the victim.  There is also evidence that the Defendant wanted

M.M. to kill his wife and that the Defendant would pay M.M. for the task.  Notably in his

objections to the PSR, the Defendant does not deny these particular comments and instead states

that "statements along those lines were made in jest."  PSR, at p. 40.  In these chats, the

Defendant expressed a sexual interest in M.M.'s 8 year old victim, as well as specified an interest in a young boy that lived in the Defendant's apartment building.  In a chat from 2017 using a program called Zoom, a video conferencing software, the Defendant interacted with another offender and discussed how he had whipped, strangled, bottle raped, and made a 14 year old bleed.  He stated that he was with the 14 year old (presumably the victim) who "took it all at 5 [years old]," and that he was "trying to get a 10 [year old]."  In this chat, the Defendant stated, "the 10yo will be very rough" and later stated, "fucking boys is what i love doing."  These statements further demonstrate the dangerousness and depravity of the Defendant.

M.M. was not the only other offender with whom the Defendant conspired to produce child pornography.  The images and videos found on the Defendant's devices demonstrate that the Defendant often created child pornography with his victim for other individuals, and received child pornography from them that was created specifically for the Defendant.  Of the hundreds of unique files depicting child pornography of the victim, some of the file names or handwritten signs shown in the files indicate that the images and videos were created with the victim specifically for other individuals.  Similarly, there were several images and videos of child pornography in the Defendant's collection with signs demonstrating that the files were produced specifically for the Defendant by these users.  Many of the names that were included in these signs or filenames were recognized usernames of active members and producers of child pornography from various boards devoted to the sexual exploitation of children on the anonymous network.

Regarding Count 21, the Defendant had hundreds of thousands of images and videos of child pornography scattered throughout the multiple digital devices stored in a variety of locations, which he gathered from other offenders and various internet sources.  On just one

external hard drive, the forensic examiner found almost 200,000 images and over 7,000 videos. Most of the videos and at least half of the images were identified as child pornography, including children as young as approximately 3 years old. Other files were identified depicting physical abuse, bondage, or other forms of torture as part of the sexual abuse. The Defendant's subfolders for some of his files included those named "boy sex," "Jerk off," and "RAPE." The Defendant's collection and consumption of these files represent ongoing abuse to the individuals depicted. Some of the identified victims have shared how the circulation of these images and videos depicting their sexual abuse in perpetuity continues to affect their lives. Those impact statements have been provided in the Notice of Filing of Victim Impact Statements, Docket 51, Exhibits 2-29 (under seal).

The Defendant used his vast collection of material to entice the victim to engage in additional sexual acts. The victim reported that the Defendant showed him child pornography, including men doing things to children, and children doing sexual acts to other children. The Defendant also had the victim chat with other men and their children online. The Defendant kept hundreds of Microsoft Word documents on his devices in multiple locations which contained sexual text stories about minors, including stories about minors engaged in sexually explicit conduct and minors being tortured.

### III.   The Applicable Sentencing Guidelines Advise an Effective Life Sentence

As accurately calculated in the PSR, the Defendant's long list of criminal conduct in the present case results in a total offense level of 51, after an adjustment for the Defendant's acceptance of responsibility with his guilty plea. Even at Criminal History I, the Defendant's offense level is well in excess of offense level 43, at which the guidelines advise a sentence of imprisonment for life.

In this case, however, the total offense level of 51 actually underrepresents the Defendant's criminal conduct. First, offenses of the Sexual Exploitation of Children are excluded from the "grouping" rules of United States Sentencing Guideline ("USSG") § 3D1.2, and are accounted for separately in determining the total offense level – but only to a limited extent. Pursuant to USSG § 3D1.4, once five "units" are exceeded – and five levels added to the offense level – there are no further increases in the offense level. In this case, the Defendant's convictions amount to 14 units, with only 20 of his specific child pornography files charged as production counts when he could have been charged with the hundreds of images and videos he created of his abuse of the victim. Despite 14 grouping units (and the possibility of many more), by operation of USSG § 3D1.4, only five levels were added to the total offense level. Second, the Defendant manipulated the timestamps of many of the files depicting his abuse of the victim, which made it difficult to determine the exact age of the victim at the time of the production for the individual counts. In order to take a conservative approach in the guidelines calculation, the specific offense characteristic under § 2G2.1(b)(1)(B) for a minor between ages 12 and 16 was applied, but many of the counts could have had an additional 2 levels because the victim was under the age of 12 per § 2G2.1(b)(1)(A). Finally, the five levels that are added under USSG § 4B1.5(b)(1) only requires two separate occasions of prohibited sexual conduct with a minor to apply. In Defendant's case, this enhancement understates the extreme duration of abuse inflicted on the victim, the hundreds of images and videos of child pornography that the Defendant created of the victim, and the pattern of activity of sexual exploitation of numerous minors that the Defendant engaged in for many years. Though any total offense level above 43 is, in any event, treated as offense level 43 in determining the sentence (USSG § 5A, Application Note 2),

as a measure of the full impact of the Defendant's crimes it is nonetheless significant that his total offense level of 51 does not account for a large part of his conduct.

In cases where there are multiple counts of conviction and the guidelines advise life imprisonment, USSG § 5G1.2(d) applies.  That subsection states that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."  USSG § 5G1.2(d).  Relying in large part on that subsection, the Seventh Circuit Court of Appeals has repeatedly upheld maximum, consecutive sentences on each of an offender's counts of conviction where the advisory guidelines range was life imprisonment, even when the resulting sentence well exceeded the life span of the offender.  *United States v. Thompson*, 523 F. 3d 806, 814 (7th Cir. 2008); *United States v. Veysey*, 334 F. 3d 600, 602 (7th Cir. 2003).  In fact, any sentence that falls within a properly calculated guidelines range is presumptively reasonable. *United States v. Mykytiuk*, 415 F. 3d 606, 608 (7th Cir. 2005).

In the instant case, the applicable guideline of life imprisonment means that the Defendant's guideline sentence is 620 years – the maximum sentence on each of the counts of conviction, run consecutively.  The government respectfully submits that, in appropriate deference to the guidelines, if the Court elects not to sentence the Defendant to 620 years of imprisonment, the Court should order that whatever terms of imprisonment are imposed on at least each count relating to the Defendant's production of child pornography are to be run consecutive to one another.  The government submits a sentence of 620 years is appropriate given the Defendant's conduct.

**IV.     The Sentencing Factors Enumerated in 18 U.S.C. § 3553(a) Demonstrate that the Defendant Should Be Sentenced to a Term of Imprisonment of 620 Years**

In determining a just sentence, the Court is directed by statute to consider a number of factors.  18 U.S.C. § 3553(a).  The first factor to consider is the nature and circumstances of the offenses and the history and characteristics of the Defendant.  18 U.S.C. § 3553(a)(1).  Each of these points strongly suggests that the Defendant should receive a very lengthy sentence.  The Defendant engaged in the serial sexual exploitation of the victim over the course of many years.  This exploitation included extreme forms of abuse and torture, and serious psychological manipulation and scarring considering the Defendant's relationship to the victim.  The Defendant manipulated other caregivers of the victim during this long time period, and violated the trust of both the victim and his mother to a degree that is difficult to contemplate.  During this same time period, the Defendant used the files that he created to enhance the collection and sexual desires of himself and other offenders, thus encouraging the sexual abuse and torture of other minor victims and ensuring that the files depicting the victim's rape and abuse will forever be a part of the Internet's collection of child pornography in circulation among the worst offenders.

In this case, the Court is afforded an unusually high degree of insight into the nature and circumstances for at least a sampling of the Defendant's offenses.  The Court can actually see in the images of sexual abuse produced by the Defendant his callous, despicable treatment of the victim over the course of the years in which he produced Counts 1-20.  The image files are not a mere snapshot in time, but, in their having been produced on various occasions and over the course of years, demonstrate the Defendant's continual, persistent inability to control his voracious sexual appetite for children.  A fair review of the facts and circumstances of the Defendant's conduct and history demonstrates with stark clarity that the Defendant must be sentenced to a significant prison term well in excess of his life span.

11

The sentence ultimately imposed on the Defendant must reflect the seriousness of his offenses, promote respect for the law, and provide a just punishment for the offense.  18 U.S.C. § 3553(a)(2)(A).  There can be no question that the Defendant's offenses, both in their character and in their frequency and repetition, are among the most serious under the law.  The Court is well aware of the severity of the images the Defendant produced and the vulnerability of the victim due to his age and his relationship with the Defendant.  As important as it is to focus on the Defendant's sexual abuse/production of child pornography offenses, it is also important that his serious trafficking offenses not be overlooked.  The trafficking and collection of child pornography images is a horrific re-victimization of the children depicted.

The government asserts that the seriousness of the Defendant's offenses – both production and possession of child pornography – necessitates that the Defendant be sentenced to a significant prison term well in excess of his life span in order to promote respect for the law and to provide a just punishment.  The sentence imposed on the Defendant must also afford adequate deterrence to criminal conduct of this nature, and protect the public from further crimes of the Defendant.  18 U.S.C. § 3553(a)(2)(B) and (C).  It is clear from the nature and circumstances of the Defendant's offenses that he was obsessively focused on fueling his sexual fantasies by serially sexually exploiting the victim in inhumane ways and seeking out a vast collection of child pornography.  There is no reason to believe that the Defendant would ever abandon this acting out of his fantasies, as he engaged in seeking out opportunities to do so for years, on multiple platforms, including trying to use the victim to recruit other victims and through using anonymization mechanisms to evade capture.  He was only stopped upon his arrest.  The public can only be adequately protected from the Defendant with his imprisonment for the rest of his life.  Similarly, the public can only be protected from like-minded individuals

(and those individuals can only be adequately deterred from acting on such an all-consuming obsession) with a significant sentence that demonstrates the Court's willingness to deliver an appropriate punishment.

Finally, a sentence comprised of consecutive terms of imprisonment on each production of child pornography count of conviction would be consistent with sentences issued to offenders with similar conduct in this District.  *See, e.g., United States v. Andrew McGrath*, 1:09-cr-0169-WTL-KPF (defendant sentenced to a total term of imprisonment of 370 years, running each count of sexual exploitation of children and one count of possession of child pornography consecutively); *United States v. David Metzger*, 1:09-cr-0188-LJM-KPF (defendant sentenced to a total term of 235 years, running each count of sexual exploitation of children and one count of possession of child pornography consecutively) (affirmed on appeal, *United States v. Metzger*, 411 Fed. Appx. 1, 2010 WL 4628115 (7th Cir. 2010) (unpublished opinion)); *United States v. Mark Armstrong*, 4:09-CR-12-DFH-MGN (75 year sentence imposed on three counts of the sexual exploitation of children); *United States v. Dick Noel*, 1:06-cr-17-JDT-KPF (80 year sentence imposed, issuing a sentence of 25 years on each of the three counts of Sexual Exploitation of Children and 5 years on the count of Possession of Child Pornography, all consecutive to one another) (affirmed as reasonable on appeal, *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009)).

The government is seeking a total sentence well in excess of those issued on the above cases, but entirely consistent with the manner in which those sentences were calculated.  Just as in the above cases, the government is seeking a sentence comprised of consecutive sentences for each of the production of child pornography convictions with an additional consecutive sentence for the possession of child pornography.  Many of the cases cited above did not involve the

heinous facts that makes the Defendant's conduct particularly egregious. Considering the monstrous and evil conduct depicted in the Defendant's production of child pornography and immense collection of possessed child pornography, including the ways in which the Defendant used his productions and collection to encourage additional abuse, the Defendant deserves the maximum sentence under the law. To do less is to allow the Defendant to escape responsibility for an occasion of the sexual exploitation of a child, for the deepening of his or her trauma at his hands, and yet another instance of his manipulation and breaking of trust with the victims.

## V.    Conclusion

A sentence of 620 years imprisonment fairly reflects the factors to be considered under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the Defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of the Defendant, and the need to avoid unwarranted sentencing disparities.

The Sentencing Commission, Congress, and courts across the country have repeatedly recognized the pain and suffering that the creation and trading of child pornography has inflicted on the children depicted. These children are not abstractions or objects; they are real, innocent, human beings who experienced untold horror in order for these pictures and videos to be produced. Once produced, the callous consumption and sharing of the images by others wishing to enhance their own private collections, use the images to find other like-minded individuals, or justify additional abuse perpetuates the pain and suffering by the victims depicted and countless others. The cruelty to which the Defendant subjected the victim in order to create eternal recordings of the Defendant's sexual depravity demonstrates that the Defendant is one of the

worst of the worst offenders in the world of sexual exploitation of minors.  He deserves a

sentence that reflects that title.

Respectfully submitted,

Josh J. Minkler
United States Attorney

By:     s/Steven D. DeBrota

        Steven D. DeBrota
        Deputy Chief, General Crimes Unit
        Office of the United States Attorney
        10 W. Market Street, Suite 2100
        Indianapolis, IN 46204-3048
        Telephone: (317) 226-6333
        Fax:  (317) 226-6125
        Email:  Steve.DeBrota@usdoj.gov

        s/Lauren S. Kupersmith

        Lauren S. Kupersmith
        Trial Attorney
        Child Exploitation & Obscenity Section
        U.S. Department of Justice, Criminal Div.
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone: (202) 514-1564
        Fax:  (202) 514-1793
        Email:  Lauren.Kupersmith@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2019, a copy of the foregoing Sentencing

Memorandum was filed electronically. Notice of this filing will be sent to all ECF-registered

counsel of record via email generated by the Court's ECF system.  Parties may access this filing

through the Court's system.

By:     s/Lauren S. Kupersmith
_____
        Lauren S. Kupersmith
        Trial Attorney
        Child Exploitation & Obscenity Section
        U.S. Department of Justice, Criminal Div.
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone: (202) 514-1564
        Fax:  (202) 514-1793
        Email:  Lauren.Kupersmith@usdoj.gov