**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:18-cr-00109-JMS-MJD-1 |
| ) | |
| ) | |
| JEFFREY ESPOSITO, ) | |
| Defendant. ) | |

### DEFENSE SENTENCING MEMORANDUM

Mr. Esposito, aged 54 and 4 months, has a Social Security-calculated life expectancy of an additional 27.9 years with an estimated age at death of 82.2 years. https://www.ssa.gov/cgi-bin/longevity.cgi, last visited January 3, 2020. The sentence recommended by the Sentencing Guidelines in his case is life in prison, truncated to 620 years by virtue of the statutory maximum penalties. Factoring in available 15% good time credit in the bureau of prisons and 22 months' credit time accrued in pretrial custody, a sentence of 420 months would expire 27.9 years following the scheduled sentencing hearing – precisely at the end of Mr. Esposito's anticipated life. The government's sentencing memorandum (Document 52) advocates a sentence of 620 years. For all practical purposes, a 420-month sentence is the equivalent of a 620-year sentence. The difference is of little import to Mr. Esposito, society, or the primary victim in this case. A lengthy sentence, but one that allows Mr. Esposito's release to probation supervision as an old man, ought to be considered a sentence sufficient to meet applicable sentencing goals on the facts of this case.

A 420-month prospective sentence marks a bright line. "There is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict

will not live out his sentence should certainly give pause to a sentencing court." *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006). "Death is by universal consensus a uniquely traumatic experience, and prison often deprives defendants of the ability to be with their families or to otherwise control the circumstances of death. John A. Beck, *Compassionate Release from New York State Prisons: Why Are So Few Getting Out?* 27 J.L. Med. & Ethics 216, 223-24 (1999); Jason S. Ornduff *, Releasing the Elderly Inmate: A Solution to Prison Overcrowding*, 4 Elder L.J. 173, 192 (1996); *see also* Sasha Abramsky, *Prisoner's Dilemma: Lifers*, Legal Aff., Apr. 2004, at 40, 41, 43 (describing death at Angola Prison in Louisiana). A sentence that forces this experience on a prisoner is quantitatively more severe than a sentence that does not consume the entirety of a defendant's life, inflicting greater punishment and creating a stronger deterrent effect. *See, e.g.*, *United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir. 1991) (holding that an increase in penalty that ensured death in prison would likely deter bail jumping); Elizabeth Rapaport *, Retribution and Redemption in the Operation of Executive Clemency*, 74 Chi.-Kent L. Rev. 1501, 1521 (2000). Additionally, of course, the physical constraints of a dying illness will incapacitate some defendants as effectively as imprisonment, making such a long sentence unnecessary." *Wurzinger*, at 652.

      The concurring opinion in *U.S. v. Craig*, 703 F.3d 1001 (7th Cir. 2012) is worthy of some significant attention in the context of this case. There, a 46-year-old defendant on child pornography production charges was sentenced to a 50-year sentence. His offense conduct included repeated sexual assaults and soliciting illegal images from a child victim from the age of 11 to the age of 14. That defendant's total guideline offense

level was 43, which predicted a sentence of life in prison. While the Court granted a defense motion to withdraw from the appeal of a Guideline sentence, Judge Posner's concurrence was insightful.

The opinion first considered the expense associated with confinement of the elderly. "Federal imprisonment is expensive to the government; the average expense of maintaining a federal prisoner for a year is between $25,000 and $30,000,[1] Notice, Bureau of Prisons, 76 Fed. Reg. 57081 (Sept. 15, 2011), www.gpo.gov/fdsys/pkg/FR-2011-09-15/pdf/2011-23618.pdf, and the expense rises steeply with the prisoner's age because the medical component of a prisoner's expense will rise with his age, especially if he is still alive in his 70s (not to mention his 80s or 90s). It has been estimated that an elderly prisoner costs the prison system between $60,000 and $70,000 a year. Kelly Porcella, Note, "The Past Coming Back to Haunt Them: The Prosecution and Sentencing of Once Deadly But Now Elderly Criminals," 81 St. John's L. Rev. 369, 383 (2007)." Id at 1003.

The opinion considered the cost versus the social benefits of extended imprisonment to society – deterrence and incapacitation.  "For suppose the defendant had been sentenced not to 50 years in prison but to 30 years. He would then be 76 years old when released (slightly younger if he had earned the maximum good-time credits). How likely would he be to commit further crimes at that age? As we noted in *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012), although persons 65 and older are 13 percent of the population, they accounted for only seven-tenths of one percent of arrests in 2010. Last year 1,451 men ages 65 and older were arrested for sex

---

[1] Currently $37,448.  PSI, paragraph 277.

offenses (excluding forcible rape and prostitution), which was less than 3 percent of the total number arrests of male sex offenders that year. FBI, *Uniform Crime Reports: Crime in the United States* 2011, www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2011/crime-in-the-u.s.-2011/tables/table-39. Only 1.1 percent of perpetrators of all forms of crimes against children are between 70 and 75 years old and 1.3 percent between 60 and 69. U.S. Dep't of Health & Human Services, Children's Bureau, "Child Maltreatment 2010" 76(2010), http://archive.acf.hhs.gov/programs/cb/pubs/cm10/cm10.pdf. How many can there be who are older than 75?" Id.

The opinion summarized the criticism of the sentence. "But virtually all sentencing, within the usually broad statutory ranges—the minimum sentence that the judge could have imposed in this case, by making the sentences on all four counts run concurrently, as he could have done, would have been 15 years, 18 U.S.C. § 2251(e), and the maximum sentence, by making them all run consecutively, as he could also have done, would have been 120 years—involves guesswork. I am merely suggesting that the cost of imprisonment of very elderly prisoners, the likelihood of recidivism by them, and the modest incremental deterrent effect of substituting a superlong sentence for a merely very long sentence, should figure in the judge's sentencing decision." Id at 104.

Mr. Esposito acknowledges the wrong he has done and the pain he has caused by his conduct. He also acknowledges the seriousness of his offense and the harm he has inflicted on Minor Victim 1 and the family. The duration of the pattern of abuse and the admittedly shocking nature of the abuse inflicted are relevant to a consideration of

the "nature and circumstances of the offense" pursuant to 18 U.S.C. § 3553(a). Yet the shock value of the offense conduct ought not to swallow up other applicable considerations. The rest of Mr. Esposito's life and his conduct following his arrest ought to factor into the consideration of a sufficient sentence. Mr. Esposito, at the age of 55, is a first time offender with a history of hard work and providing financially for his family. He has admitted his conduct and plead guilty to all charges without the benefit of a plea agreement, sparing the minor victim the trauma of a trial and leaving the United States and the Court free to devote resources toward other prosecutions. An effective life sentence in this case would leave no room to consider an incrementally more serious case involving a repeat offender who killed, maimed, or threatened a victim and subjected a victim to reliving his or her abuse at a trial.

A sentence that might allow Mr. Esposito's release to federal supervision at an age when the risk of recidivism would appear slight would fairly take into account the harm resulting from Mr. Esposito's conduct, his positive personal history and characteristics, the advice of the Sentencing Guidelines, the applicable 18 U.S.C. §3553(a) factors and the age-related considerations urged in *Craig*.

Respectfully submitted,

*William Dazey Jr.*
William Dazey Jr.
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520

## **CERTIFICATE OF SERVICE**

    I certify that on January 3, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*William H. Dazey, Jr.*
William H. Dazey, Jr